## CALVIN BURNS v. JOSHUA JAGMETTY AND ATLANTIC CITY AND SHORE RAILROAD COMPANY.

Submitted March 19, 1914—Decided June 2, 1914.

In proceedings under the act of 1911 for the prevention of trespassing upon railroad trains and railroad property (*Pamph. L.* 1911, *p.* 659), it is necessary to prove a trespass contrary to the rules of the railroad corporation and an intention to ride without paying fare or to do the other acts mentioned in the statute.

On *certiorari.*

Before Justices SWAYZE and BERGEN.

For the prosecutor, *Babcock & Champion.*

For the defendants, *Bourgeois & Coulomb.*

The opinion of the court was delivered by

SWAYZE, J. The prosecutor was convicted of a violation of the act of 1911, for the prevention of trespassing upon railroad trains and railroad property. *Pamph. L.* 1911, *p.* 659. He had boarded a car at Pleasantville; the car was crowded; he had no seat and when the conductor demanded fare the prosecutor refused to pay until provided with a seat; none could be provided; he remained on the car without paying fare, although he might have alighted at two regular stops. The railroad company was incorporated under the General Railroad law, but the custom seems to have been to collect fares on the car as in the case of street railways. There was and is no claim that the prosecutor entered the car with the intention of traveling without paying fare. There was no proof of any rule of the company that he violated.

The title of the act of 1911 does not point to cases of passengers whose original entry upon the property of the company was lawful. It points only to cases of trespass. That such was in fact the meaning of the legislature seems clear from the language of the act itself. It groups persons on engines, passenger cars, freight cars, coal cars and other cars, with persons on railroads or railroad property. The act requires, in order to constitute at least some of the offences, that the defendant should be on the property (1) contrary to the rules of the corporation owning or operating the same, and (2) "with the intention of being in or upon, riding or traveling upon such engine or car or railroad property without paying fare or of committing larceny, violence, or destruction thereon, or of threatening, intimidating or assaulting travelers or other persons upon such engine or cars." The various kinds of misconduct are such as might naturally be expected from trespassers; they are not such as might naturally be expected from passengers.

It is difficult for us to believe that the legislature meant the act to apply to a case where by custom a person pays no fare until he has proceeded some distance; such a person is indeed on the car with the intention of traveling upon it, and he is there without paying fare, as all of us are who travel on

street cars; he is therefore within the language of the second clause which does not limit its application to persons who intend not to pay fare; but surely the legislature did not mean to enact that the millions who travel on cars, sometimes for considerable distances, without any expectation of paying fare until it is demanded, or those who travel free by right, should be adjudged disorderly persons. Such a construction of the act would be absurd. It is not necessary, since the legislature has required in order to constitute the offence that it should be contrary to the rules of the company. It is said that this provision relates only to persons who are on "any railroad or railroad property" as distinguished from engines or cars. Such a limitation of the language disregards the fact that the words "contrary to the rules" are coupled with the words "with the intention" by the word "and." If the former words apply only to persons on "any railroad or railroad property," and not to persons on engines and cars, the application of the latter words must be limited in the same way. The consequence would be that there would be no limitation as to persons on engines or cars, and any person found entering or being on any railroad engine or car, passenger, freight, coal or other car, would have to be adjudged a disorderly person and might be imprisoned in the county jail for thirty days. No one could enter a passenger train without incurring the risk of prosecution. So absurd a result demonstrates that the construction contended for must be wrong.

The more important suggestion is that suggested in the beginning. We must so construe the act, if we can, that it shall be constitutional. Unless it is limited to trespassers, its object is not expressed in the title. No doubt the rules of all companies do so limit the prohibition of entry upon the railroad property. So far as they do, the act is sustainable. But if the act is construed to apply to passengers whose original entry is lawful, the object is not expressed in the title. The cases of State v. Overton and State v. Campbell, to which we are referred, were indictments in which the right to eject passengers was sustained, but it was not adjudged that the pas-

sengers were trespassers; it could not have been so adjudged unless the court was prepared to go the length of holding them trespassers *ab initio*.

The judgment must be reversed.